**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br>v.<br>[2] RAFAEL A. RUIZ-GARCÉS,<br>**Defendant.** | **CRIM. NO. 26-186-2 (RAM)** |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Rafael A. Ruiz-Garcés's ("Defendant" or "Mr. Ruiz-Garcés") *Motion for De Novo Hearing Bail Review and Revocation of Detention Order* ("*Motion*"). (Docket No. 238). For the reasons set forth below, the Court **GRANTS** the *Motion* subject to the conditions specified herein and in the separate order of release.

## I. BACKGROUND

On May 8, 2026, a Grand Jury in this district returned an *Indictment* charging Mr. Ruiz-Garcés and five co-defendants. (Docket No. 3). Of the twenty-four count *Indictment*, Defendant was charged with: racketeering, in violation of 18 U.S.C. § 1962(c) (Count One); racketeering conspiracy, in violation of 18 U.S.C. § 1962(d) (Count Two); conspiracy to import cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and (b)(1)(B)(ii), 963 (Count Three); conspiracy to distribute and

possess with the intent to distribute controlled substances, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(D), and 846 (Count Four); importation of cocaine into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and (b)(1)(B)(ii) (Count Seven); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Eighteen); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Nineteen). Id.

On May 15, 2026, Magistrate Judge Marcos E. López held a detention hearing and found that there were no conditions of release that would reasonably assure Defendant's future appearance and the safety of the community. (Docket No. 170). On June 15, 2026, Defendant filed the present *Motion* seeking *de novo* review of the Magistrate Judge's detention order. (Docket No. 238). He contends that although the charged offenses carry a rebuttable presumption of detention under § 3142(e)(3)(A)-(B), he does not pose a risk of flight or danger to the community and there are conditions of release that could be crafted to ensure his appearance before the Court and protect the community. Id. The Court held a *de novo* hearing on October 1, 2026. (Docket No. 253). At the hearing, the Government called three witnesses. First, the Government called Puerto Rico Police Bureau (PRPB) Agent Felipe Rivera-Rivera ("Agent Rivera"), assigned to Homeland Security

Investigations, who testified that he was present at the search of the home in Añasco pursuant to a search warrant and as to the evidence supporting the charges against Defendant. Id. Second, the Government called United States Postal Inspection Service Inspector Jorge Rios ("Inspector Rios"), who testified as to packages seized and searched in early May that contained cocaine and the Defendant's fingerprints. Id. Third, the Government called Customs and Border Patrol (CBP) Agent Carlos Gómez ("Agent Gómez"), who testified as to the Defendant's exits and entries from ports of entry in the United States during the past several years. Id. The Government also proceeded by proffer and argued that Defendant represents both a flight risk and danger to the community. Defendant argued to the contrary.

After considering the evidence and the arguments of the parties, the Court finds that Defendant has introduced sufficient evidence to rebut the 18 U.S.C. § 3142(e)(3) presumption and that the Government has not proven by the relevant standards that no conditions of release could reasonably assure the safety of the community and Defendant's appearance as required.

## II. LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer

to the magistrate judge's findings or give specific reasons for rejecting them." United States v. Cidraz-Santiago, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." Id.

**B. The Bail Reform Act**

Pursuant to the Bail Reform Act of 1984, a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Bail Reform Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." Id. § 3142(e).

i. Standard of proof

The standard of proof for detention on the grounds of dangerousness is clear and convincing evidence. Id. § 3142(f). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted), *aff'd*, United States v. Acevedo-Ramos, 744 F.2d 203 (1st

Cir. 1985). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention due to risk of flight is preponderance of the evidence. United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

ii. Factors the Court must consider

To determine whether there are conditions of release that assure a defendant's appearance and the safety of the community, judicial officers must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

iii. The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to

trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In cases involving drug trafficking crimes, the presumption comes from "Congress's finding that drug traffickers often have the resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); *see also* United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991) (noting appellant-defendant remained risk of flight where drug organization "probably could absorb the loss of $200,000 worth of security"); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988) (gravity of charges and non-citizen status makes the risk of flight pronounced); United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985) (reviewing the evidence before Congress that drug offenders pose particular flight risk), *partially abrogated on other grounds by* United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990).

Once triggered, Section 3142(e)(3)'s presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy the burden of production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id.

Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, Section 3142(e)(3)'s presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387; *see also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

## III. DISCUSSION

### A. The nature and circumstances of the offense charged

Mr. Ruiz-Garcés was indicted on various counts of drug trafficking offenses, racketeering, money laundering, and conspiracy. (Docket No. 3). Here, the presumption comes from 18 U.S.C. § 3142(e)(3)(A), *i.e.*, probable cause to believe that Defendant committed "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled

Substances Act" as well as 18 U.S.C. § 3142(e)(3)(B), *i.e.*, probable cause to believe that Defendant committed "an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b." Given the severity of the punishment provided by the relevant statutes, this factor favors detention. However, as the Court will discuss, other factors favor release.

**B. The weight of the evidence against Defendant**

The Government purports to have evidence that Defendant was involved in international drug smuggling ventures whereby Defendant was involved in the distribution, possession, and importation of cocaine, in various counts that each total five (5) kilograms or more of cocaine. The evidence includes witness testimony; vast, unexplained wealth; a sworn statement from an individual purporting to have heard that Mr. Ruiz-Garcés was offering money to murder an individual (though Defendant was not charged with any count involving violence); and links between Defendant and battery boxes that were shipped with bricks of cocaine stashed inside.

Regardless of the import or weight of the evidence proffered by the Government, the Court is not concerned with Mr. Ruiz-Garcés's guilt or innocence at this stage. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). The Court's task is to

assess whether there is a set of conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c). The Court finds that such conditions exist.

**C. Defendant's personal history and characteristics**

The third factor—Defendant's personal history and characteristics—favors release pending trial. Defendant is a lifelong resident of Puerto Rico. He has a common law wife and a teenage child, with whom he resides in the home that he and his wife own together. Some of Mr. Ruiz-Garcés's family members attended the *de novo* hearing. Defendant carries a U.S. passport, which is now in possession of the arresting agents, and his most recent travel was via pleasure boat outside of Puerto Rico. Finally, Defendant has no criminal history.

In support of its argument that Defendant is a risk of flight, the Government avers that Mr. Ruiz-Garcés has access to vast, unexplained wealth, likely from his drug trafficking ventures. For example, the Government proffered that, although Defendant has a reported income of $10,000-$16,000, he has recently traveled to many exotic locations and has several luxury vehicles. The Government further proffered Mr. Ruiz-Garcés frequently travels outside of Puerto Rico via pleasure boat and is a high-level member

of an international drug trafficking organization with underworld contacts in the Dominican Republic, Colombia, and Venezuela.

Defendant has established he has strong community ties to Puerto Rico, rebutting the presumption under 18 U.S.C. § 3142(e). *See* United States v. Newton, 215 F.3d 1313 (1st Cir. 2020) (defendant's evidence of family and business ties to Puerto Rico, no prior criminal convictions, and compliance with pretrial release conditions sufficient to rebut presumption). The Government's proffer focused on the fact that the Defendant has massive, unexplained wealth, with two homes, frequent travels via pleasure boat and commercial aircraft, and several luxury vehicles plus a horse trailer. The Government elicited testimony from CBP Officer Gómez who testified that Defendant had traveled inbound to the United States as recently as May 2026 via pleasure boat. Further, Officer Gómez explained that exits via pleasure boat do not have to be declared to Customs and Border Patrol. The nucleus of Defendant's family and business ties, however, lies in Puerto Rico—including his wife, a thirteen (13) year old daughter with whom he resides, and his close relationship with the rest of his family, who also reside in Puerto Rico. Further, the Government failed to show how certain conditions, such as electronic monitoring, would be insufficient to ensure Defendant's appearance before the Court. Accordingly, the Court finds that the Government

did not meet its burden of persuasion that Defendant is a risk of flight.

**D. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release**

The Government made several arguments as to Defendant's potential to be a danger to the community if released. It argued that the presence of six firearms at Defendant's residence, five that are registered to Defendant and one that belongs to a third party, an alleged friend of Defendant, supports the inference that Defendant has potential to be a danger to the community if released. In support of this argument, the Government presented testimony from Agent Rivera who explained the evidence against Defendant that was seized in the searches of Defendant's homes in Añasco, Puerto Rico and Kissimmee, Florida. The Government argued further that the Defendant was trafficking ~four kilos of cocaine through the USPS immediately before his arrest in May. In support of this argument, the Government elicited the testimony of Postal Service Inspector Rios who explained the seizure of the packages that contained the batteries filled with cocaine, and Agent Rivera's testimony regarding the boxes containing the same type of batteries found in Kissimmee, Florida, as were seized by the Postal Service containing cocaine. However, Mr. Ruiz-Garcés argued that none of the charges related to violence are brought against him,

that he had a license to carry all but one of the firearms found in his home, which he alleges was left there by a friend inadvertently, and that he has no criminal history, violent or otherwise. The Government further noted that Defendant has a few violent incidents that occurred in the 2020-2021 period. Defendant highlighted that those incidents were some time ago with no incident since, both before and after his arrest.

The only other evidence the Government presented regarding Defendant's continuing threat to public safety was the sworn statement at Exhibit 41 given by Julio A. Aragones-Fred, allegedly the driver involved in the double murder of two former kidnappers of Valentin-Vega, the alleged head of the international drug trafficking organization charged in the indictment. Mr. Aragones-Fred was later murdered after beginning to cooperate with the government. Specifically, on page 5 of the translation of the sworn statement, Mr. Aragones-Fred stated that the word on the street was that Defendant was offering $40,000 to murder one of the individuals who had kidnapped Valentin-Vega. Defendant highlighted during the hearing that this is a deceased declarant unexaminable in court, and was discussing what amounted to a rumor.

Notably, the Government did not present any other police reports, affidavits, testimony, or any other evidence that Defendant poses a continuing threat to public safety. Accordingly,

the Government has not met its burden to establish by clear and convincing evidence that there is no condition or combination of conditions that would reasonably assure the safety of other persons and the community.

The Court notes that the Government raises serious concerns, and drug trafficking itself is a serious offense. However, "the safety of the community can be reasonably assured without being absolutely guaranteed." United States v. Tortora, 922 F.2d 880, 884 (1st Cir. 1990) (citing United States v. Orta, 760 F.2d 887, 891-92 (8th Cir. 1985) (en banc)). Accordingly, the Court imposes herein and in the separate order of release a series of conditions, including home incarceration and electronic monitoring, which, together, can reasonably assure public safety and Defendant's appearance.

## IV. CONCLUSION

For the foregoing reasons, Defendant's *Motion for DeNovo Hearing Bail Review and Revocation of Detention Order* is **GRANTED.** Defendant Rafael A. Ruiz-Garcés **SHALL** be released subject to the following conditions:

1. Defendant must not violate federal, state, or local law while on release.

2. Defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

3. Defendant must advise the Court, the U.S. Probation Office, or the supervising officer in writing before making any change of residence or telephone number.

4. Defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the Court may impose.

5. Defendant will execute a secured bond binding Defendant to pay the United States the sum of $100,000 dollars in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

6. Defendant will submit a proposed third-party custodian, as approved by the U.S. Probation Office. The third-party custodian must agree to (a) supervise Defendant, (b) use every effort to assure his appearance at all court proceedings, (c) notify the Court immediately if Defendant violates a condition of release or is no longer in the custodian's custody, and (d) surrender any firearms he or she might possess.

7. Defendant shall reside at a suitable residence not located in an isolated part of Añasco.

8. Defendant shall submit to location or electronic monitoring as directed by the U.S. Probation Office or supervising officer and comply with all the program requirements and instructions provided.

9. Home incarceration with electronic monitoring: Defendant shall be restricted to a 24-hour-a-day lock-down at his home except for medical necessities and court appearance or other activities specifically approved by the Court.

10. Defendant's release is conditioned upon qualification of the third-party custodian, as well as verification by the United States Probation Office of electronic monitoring device capability in the proposed residence.

11. Defendant shall avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution.

12. Defendant shall submit to supervision by and report on a regular basis to the United States Probation Office.

13. Defendant will not use or unlawfully possess any narcotic drug or other controlled substances defined in 21 U.S.C. § 802 unless prescribed by a licensed medical practitioner.

14. Defendant shall refrain from the excessive use of alcohol.

15. Defendant should participate in a program of inpatient or outpatient substance abuse therapy and counseling as deemed necessary by the United States Probation Office or the Supervising Officer.

16. Defendant shall submit to testing for a prohibited substance if required by the U.S. Probation Office or the Supervising Officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct or attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

17. Defendant shall not possess a firearm, destructive device, or other dangerous weapon.

18. Defendant shall surrender any passport to the United States Probation Office.

19. Defendant shall not obtain a passport or other international travel document.

20. Defendant shall report, as soon as possible, to the United States Probation Office or the Supervising Officer any contact with any law enforcement personnel, including, but not limited to any arrest or questioning.

21. Defendant shall abide by the following restrictions on personal association, place of abode, and travel: Defendant shall reside at the address of record and shall not leave the jurisdiction of this District without first obtaining written permission from the Court.

22. Defendant shall not enter any airport or pier.

23. As an exception, the Chief United States Probation Officer or his designee, may authorize temporary changes of address and overseas travels to the mainland U.S. only, not exceeding 15 calendar days, provided the United States Attorney has no objection to it. If objected, request will have to be made in writing to the Court.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 13th day of October 2026.

s/Raúl M. Arias-Marxuach
UNITED STATES DISTRICT JUDGE